**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Jennifer Giroux, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 1:22-cv-000309-DRC** |
| | : | |
| | : | **Judge Douglas R. Cole** |
| **-vs-** | : | |
| | : | |
| | : | |
| **Frank LaRose, individually and in his** | : | |
| **official capacity as Ohio Secretary of** | : | |
| **State, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANT OHIO SECRETARY OF STATE FRANK LAROSE'S MEMORANDUM
IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION (Doc. # 3)**

Respectfully submitted,

*/s/ Mark D. Wagoner, Jr.*
Mark D. Wagoner, Jr., Trial Attorney (0068577)
David F. Axelrod (0024023)
Krystina A. Garabis (100120)
SHUMAKER, LOOP & KENDRICK, LLP
41 South High Street
Suite 2400
Columbus, Ohio 43215
Telephone:  (614) 463-9441
Fax:  (614) 463-1108
mwagoner@shumaker.com
daxelrod@shumaker.com
kgarabis@shumaker.com

Counsel for Ohio Secretary of State
Frank LaRose

## TABLE OF CONTENTS AND SUMMARY OF ARGUMENTS

INTRODUCTION...................................................................................................1

FACTS ...............................................................................................................4

    **A. Overview of 2022 Redistricting Litigation** ...................................5

This case is an outgrowth of State of Ohio's experience with the reapportionment process over the past 10 months resulting in various General Assembly district maps being adopted and then invalidated by the Supreme Court of Ohio after interest groups challenged the constitutionality of the adopted maps.  This repeated invalidation of the adopted maps resulted in intervention by a three judge panel of this Court and the delay of the May 3, 2022 primary.  In the wake of the Court's action, Ohio Secretary of State Frank LaRose issued Directive 2022-34 which, among other things, instructed the boards that the federal court order did not alter the filing deadline for the primary election

Transcript of Motion for Preliminary Injunction Proceedings, Mar. 30, 2022, (2:22-cv-00773-ALM-ART-BJB, Doc #: 150.)

    **B. Giroux's candidate filings in Hamilton County** ...........................10

Plaintiff Giroux filed for candidacy in Hamilton County on two separate occasions. She first filed to be a candidate for the U.S. House of Representatives for the First District.  She later withdrew from the Congressional race and filed a declaration of candidacy for the Ohio House of Representatives for the 27th District. Upon learning that her name would not appear on the August 2 ballot, Plaintiff Giroux filed this action seeking immediate injunctive relief.

ARGUMENT.......................................................................................................10

    **A. Standard for Preliminary Injunction**.........................................10

To be entitled to a preliminary injunction, Plaintiffs must establish that they are likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. While these factors are balanced, the likelihood of success on the merits is often a determinative factor.

*League of Women Voters of Ohio v. LaRose,* 489 F.Supp.3d 719 (S.D. Ohio 2020)
*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020)
*Capobianco, D.C. v. Summers*, 377 F.3d 559 (6th Cir. 2004).

    **B. Plaintiffs Fail to Demonstrate Success on the Merits**.................11

i

**i. Plaintiffs Giroux and Daly Lack Constitutionally Required Standing**................11

**a. The Constitutional Requirement of Standing** ...................................................11

This Court lacks jurisdiction over Plaintiffs' claims. For federal subject matter jurisdiction, a plaintiff must have standing. Standing requires a plaintiff to show injury, causality, and redressability. Neither Plaintiff meets this standard.

*Libertarian Party of Ohio v. Wilhem,* 417 F.Supp.3d 982 (S.D. Ohio 2019)
*Fair Elections Ohio v. Husted,* 770 F.3d 456 (6th Cir. 2014)
*Ohio Stands Up! v. U.S. Dept. of Health & Human Services*, 564 F. Supp.3d 605 (N.D. Ohio 2021)

**b. Plaintiffs Giroux and Daly Lack Standing because, *however* this Court rules, Giroux is ineligible to be on the 2022 primary and general election ballots**….……………………………………..……....12

Neither Daly nor Giroux suffered an injury from Directive 2022-034 and, even if successful, thus Plaintiffs would receive no relief other than the satisfaction of making the government comply with the law.

*Fair Elections Ohio v. Husted*, 770 F.3d at 460

**c. Giroux's withdrawal of her candidacy for Congress does not save her eligibility for the Ohio Statehouse, *i.e.*, her candidacy for the Statehouse was legally "dead," and cannot be revived**..................................14

Ohio law is clear that a person may not seek election in a federal or state office in the same election unless the person timely withdraws their candidacy. Here, Giroux failed to timely withdraw. The deadline for candidates to file a declaration was February 2, 2022. Giroux did not withdrawal until April 25, 2022. Her withdrawal was untimely and was too late for R.C. 3513.05 to save her candidacy, *i.e.,* her candidacy for the Statehouse was legally "dead," and cannot be revived.

R.C. 3513.052
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)
*Lance v. Coffman*, 549 U.S. 437 (2007)

**ii. This Court should defer to the *Gonidakis* Panel, which intentionally maintained the February 2 filing deadline** ...........................................................15

The Panel in *Gonidakis* was fully briefed on candidate filing deadlines for the Ohio House of Representatives, Ohio Senate, and party central committees.

Plaintiffs ask this Court to ignore the Panel's well-reasoned decision, and to move additional election timelines, something the Panel refused to do.

Transcript of Motion for Preliminary Injunction Proceedings, Mar. 30, 2022 (2:22-cv-00773-ALM-ART-BJB, Doc #: 150.)

**iii.** ***Purcell*** **precludes this Court's election eve "tugging on strings," that would interfere with the orderly and effective administration of the primary election that actually begins on June 17** ................................................20

**a. Directive 2022-34 is Constitutional Under Anderson-Burdick** ......................23

The *Anderson-Burdick* framework is a constitutional test governing First and Fourteenth Amendment challenges to election-related regulations. When there is a minimal burden on a plaintiff's rights, courts apply rational-basis review. Where there is an intermediate burden, courts balance the interests of the state with the interests of the plaintiff. Where there is a severe burden, courts apply strict scrutiny. The court utilizes a three step approach in analyzing constitutionality under Anderson-Burdick. First, the court assesses the degree to which the regulation burdens the rights of a plaintiff. Second, the court evaluates the state's justification for the regulations. Third, a court considers whether the state's justifications are constitutionally valid given its interests.

*Anderson v. Celebrezze,* 460 U.S. 780 (1983)
*Burdick v. Takushi*, 504 U.S. 428 (1992)
*Kishore v. Whitmer,* 972 F.3d 745, 749 (6th Cir. 2000)
*Kowall v. Benson,* 18 F.4th 542, 545 (6th Cir. 2021)
*Hawkins v. DeWine,* 968 F.3d 603, 604 (6th Cir. 2020)
*Daunt v. Benson*, 999 F.3d 299, 311 (6th Cir. 2021)
*Citizens for Legislative Choice v. Miller,* 144 F.3d 916, 918 (6th Cir. 1998)

**1. As a reasonable, nondiscriminatory regulation, Directive 2022-34 imposes only a minimal burden.** ................................................................24

To determine whether a regulation imposes a severe burden, courts consider content-neutrality and alternate means of access. Directive 2022-34 applies to Plaintiff and her potential supporters in the same way it applies to all potential candidates and voters in the state. Giroux could have filed for the statehouse by the February 2 deadline, but instead chose to run for a different office Because the regulation here is neutral and the State's regulatory structure gave Plaintiff unfettered access to the ballot (provided that she met the February 2 deadline and other reasonable ballot access requirements), the burden imposed by Directive 2022-34 on her and her supporters was minimal. It therefore is subject to rational-basis review.

**2. The State has compelling justifications for implementing these reasonable ballot access regulations** ....................................................25

Directive 2022-34 is necessary to facilitate the August 2 primary election. State law requires ballots for the military and overseas civilians to be ready by no later than June 17. Accordingly, Directive 2022-34 is needed to ensure that boards of election have candidates finalized no later than June 10, 2022.

Declaration of Amanda Grandjean, executed on June 8, 2022

**3. Even if intermediate, any burden on Plaintiffs is outweighed by the State's important regulatory interests** .................................................26

Any burden placed on the Plaintiffs is outweighed by the important regulatory interests of the State in ensuring a successful, effective, and smooth administration of the primary election and the obligations of state and federal law to ensure that ballots for the military and overseas civilians are ready by the time required.

Thompson v. Dewine, 959 F.3d 804, 808 (6th Cir. 2020)
R.C. 3511.04
Declaration of Amanda Grandjean, executed on June 8, 2022

**b. Plaintiffs Fail to Establish Irreparable Harm**............................26

There is no imminent and irreparable injury because regardless of how this Court rules, Giroux is not eligible for the August 2 ballot. Her candidacy for the Statehouse is legally "dead," and cannot be revived.

*Memphis A. Philip Randolph Institute v. Hargett,* 978 F.3d 378, 391 (6th Cir 2020)

**c. The Public Interest Weighs against a Preliminary Injunction**................27

In reviewing and considering the balance of equities, this Court should also consider the public interest. Judicial precedent has repeatedly emphasized that lower federal courts should not alter the election rules immediately before an election. In this instance judicial intervention would seriously disrupt the August 2 primary and should be avoided.

*Kishore v. Whitmer,* 972 F.3d 745, 751 (6th Cir. 2020)
*Purcell v. Gonzalez,* 549 U.S. 1 (2006)
*A. Philip Randolph Inst. of Ohio v. LaRose,* 831 F. App'x 188 (6th Cir. 2020)

**CONCLUSION** ....................................................................................27

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1175617
(S.D. Ohio April 20, 2022)(April 20 Order).............................1, 2, 3, 6, 7, 8, 12, 15, 18, 19, 20, 21

*Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1709146
(S.D. Ohio May 27, 2022)(May 27 Order) ....................................................................1, 9, 13, 15

*League of Women Voters of Ohio v. LaRose*, 489 F.Supp.3d 719, (S.D. Ohio 2020) ......10, 11, 21

*League of Women Voters of Ohio v. Ohio Redistricting Comm'n*,
__ Ohio St. 3d__, 2022-Ohio-65 (Ohio 2022) ....................................................................5, 6, 7, 9

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) ...................................................11, 20, 23, 26

*Capobianco, D.C. v. Summers*, 377 F.3d 559 (6th Cir. 2004) .......................................................11

*Libertarian Party of Ohio v. Wilhem*, 417 F.Supp.3d 982 (S.D. Ohio 2019) ...............................11

*Morrison v. Bd. of Educ. of Boyd Cty.,* 521 F.3d 602 (6th Cir. 2008) ...........................................11

*Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014) .................................................11, 12

*Ohio Stands Up! v. U.S. Dept. of Health & Human Services,*
564 F. Supp.3d 605 (N.D. Ohio 2021) ...........................................................................................11

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................................................15

*Lance v. Coffman*, 549 U.S. 437 (2007) .........................................................................................15

*Kishore v. Whitmer*, 972 F.3d 745 (6th Cir. 2020) ......................................................20, 23, 25, 27

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ...........................................................4, 20, 21, 23, 27

*Frank v. Walker*, 574 U.S. 929 (2014).............................................................................................20

*Veasey v. Perry*, 574 U. S. 951 (2014).............................................................................................20

*Democratic Nat'l Comm. v. Wisconsin State Legislature*, ––– U.S. ––,
41 S. Ct. 28, 31 (2020)...............................................................................................................20, 27

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ..........................................................................23, 24

*Burdick v. Takushi*, 504 U.S. 428 (1992)...................................................................................23, 25

*Daunt v. Benson*, 999 F.3d 299 (6th Cir. 2021) ................................................................24

*Citizens for Legis. Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998) .......................................24, 25

*Kowall v. Benson*, 18 F.4th 542 (6th Cir. 2021) ................................................................25

*Hawkins v. DeWine,* 968 F.3d 603 (6th Cir. 2020) .............................................................25

*Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378 (6th Cir 2020) ...........................26

*A. Philip Randolph Inst. of Ohio v. Larose*, 831 F. App'x 188 (6th Cir. 2020) ...........................27

## **Statutes**

Ohio Revised Code 3513.05 ................................................................................5, 13, 24

Ohio Revised Code 3513.041 ....................................................................................5

Ohio Revised Code 3513.30 ....................................................................................14

Ohio Revised Code 3513.31 ....................................................................................14

Ohio Revised Code 3513.052 ................................................................................14, 15

Ohio Revised Code 0511.04 ..............................................................................21, 25, 26

**DEFENDANT OHIO SECRETARY OF STATE FRANK LAROSE'S
MEMORANDUM IN OPPOSITION TO MOTION FOR TEMPORARY
RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND
PERMANENT INJUNCTION (Doc. # 3)**

Defendant Ohio Secretary of State Frank LaRose ("Secretary LaRose"), in his official and individual capacities, respectfully submits this response to Plaintiffs' *Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction* (the "Motion") (Doc. # 3), which should be **DENIED** for the following reasons:

## INTRODUCTION

Just twelve days ago, on May 27, a three judge Panel of this Court (the "*Gonidakis* Panel," or, the "Panel") ordered that "[a]ssuming no new [General Assembly district] map is approved by midnight on Saturday, May 28, we order Secretary of State Frank LaRose to push back Ohio's state primaries to August 2, 2022, and to implement Map 3 for this year's elections ***only***." *Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1709146, *1 (S.D. Ohio May 27, 2022) (the "May 27 Order"). Before entering the May 27 Order, the *Gonidakis* Panel received extensive briefing and conducted a lengthy evidentiary hearing on March 30 (the "March 30 Hearing"), which addressed myriad issues related to the Ohio redistricting process and election procedures. The Panel then issued its April 20 Memorandum Opinion and Order (the "April 20 Opinion"), where it unequivocally concluded "the state-legislative primary must be held on August 2. That is the last date, according to Secretary LaRose, when his office could hold a primary election without disrupting the general election." *Gonidakis v. LaRose*, S.D.Ohio No. 2:22-CV-0773, 2022 WL 1175617, *23 (S.D. Ohio April 20, 2022). But, while moving the primary date, the Court cautioned:

> And while we have no choice but to move the primary date, we should disturb state election deadlines and procedures as little as possible…. The Ohio Elections Calendar weaves together countless intricate and interdependent dates and

1

> procedures. Judges simply cannot know all the consequences when we start tugging on those strings. We can only be confident that our intervention *will* disrupt the system in ways known and unknown—which is why we must leave the state electoral process intact as much as we can."

*Id.* at *22.

During the March 30 Hearing, the *Gonidakis* Panel questioned how an August 2 primary date might affect the February 2 filing deadline for candidates for the Ohio Senate, Ohio House of Representatives, and State Central Committees. Based on the responses, the *Gonidakis* Panel found, in both its April 20 and May 27 Orders, that it was too late to move the February 2 filing deadline. Similarly, the *Gonidakis* Panel adopted Map 3 for this election both because 86 of the 88 county boards of election had already used it to program their voting systems, and because "some of the statutory periods have already gone into effect under Map 3, such as the 30 days for candidates to move and 90 days to register." *Gonidakis*, No. 2:22-CV-0773 at *24 (April 20 Opinion).

To implement the *Gonidakis* Panel's requirements, on May 28, 2022, Secretary LaRose issued Directive 2022-034, which observed that:

> The federal court order did not alter the partisan candidate filing deadlines for the primary election. The filing deadline for candidates for State Representative, State Senator, or Member of State Central Committee to file a declaration of candidacy was 4:00 p.m. on February 2, 2022. Write-in candidates for the primary election were required to file their declaration of intent to be a write-in candidate by February 22, 2022. If a declaration of candidacy or declaration of intent to be a write-in candidate was filed after those filing deadlines, the board must reject the candidacy.

Sec. of State Frank LaRose, Directive 2022-34 (May 28, 2022) ("Directive 2022-034")

https://www.ohiosos.gov/globalassets/elections/directives/2022/dir2022-34.pdf.

Plaintiffs Jennifer Giroux ("Giroux") and Lisa Daly ("Daly") (collectively, "Plaintiffs") object to Directive 2022-034 claiming it violates the First and Fourteenth Amendments of the U.S.

Constitution. Verified Compl. PAGEID #3, June 1, 2020, No. 1:22-CV-309. But neither Giroux nor Daly's constitutional rights have been violated. Plaintiff Giroux is simply a disgruntled would-be candidate for the 2022 election. Two other candidates timely filed by the February 2 deadline and the Hamilton County Board of Elections certified them to appear on the ballot as a candidates for the Republican Primary in the Ohio House of Representatives for the 27th District. (*See* Stipulation of Facts ("Stip."), at ¶¶6, 21) Plaintiff Giroux first filed, and then withdrew, to be a candidate for the U.S House of Representatives for the First Congressional District in the May 3 Republican Primary. (Stip. at ¶¶12, 31) Because she elected to file first for the U.S. House of Representatives on March 2, 2022, after the February 2 deadline for the Ohio House of Representatives, Giroux failed to file her declaration to run for the Ohio House of Representatives by the earlier February 2 deadline. (Stip. at. ¶¶12, 31) Under Directive 2022-034, Giroux's late filing precludes her from being on the ballot for the upcoming August 2 primary. Directive 2022-034 at 2. (Stip. at. ¶42) As a result, the Hamilton County Board of Elections refused to certify her name to appear on the August 2 ballot on June 8. (Stip. at. ¶42)

Despite the clear guidance about the February 2 filing deadline from the *Gonidakis* Panel and the Ohio Secretary of State, Plaintiffs nevertheless ask this Court to "tug on the strings" of this election and resurrect Giroux's untimely declaration of candidacy. She urges the Court to:

(1) Render a declaratory judgment declaring as unconstitutional Directive 2022-034 to the extent it seeks to impose a filing deadline for declaration of candidacy and the associated petition (i) 6 months before the actual primary date of August 2, 2022; or (ii) before the final determination and adoption of the state legislative district maps for which individuals would be candidates in the primary election to be held on August 2, 2022;

(2) Issue an injunction restraining the enforcement of Directive 2022-034 to the extent it seeks to impose a filing deadline for declaration of candidacy and associated petition (i) 6 months before the actual primary date of August 2, 2022; or (ii) before the final determination and adoption of the state legislative

3

district maps for which individuals would be candidates in the primary election to be held on August 2, 2022; and

(3) Issue an injunction directing the Hamilton County Board Of Elections and its individual members immediately to process the declaration of candidacy and petition filed by Jennifer Giroux on May 1, 2022, consistent with the process of all other declarations of candidacy and petitions of those seeking to appear on the ballot at the forthcoming primary election and, in turn, to proceed to place the name of Jennifer Giroux on the ballot at the forthcoming primary election to be held on August 2, 2022, as a candidate for state representative for her respective district based on the state legislative district map adopted by a three-judge *Gonidakis* Panel of this Court effective May 28, 2022, together with any other relief to which she may be entitled in equity or in law.

Verified Compl. PAGEID #14-15.

This Court should not accept Plaintiff's invitation for election eve mischief. As the attached declaration of Deputy Secretary of State Amanda Grandjean makes clear, granting Plaintiffs' requested relief would create "significant, and potentially disastrous, risks to the election administration process and for the local boards of elections that are making their best efforts to administer an additional, unplanned, statewide primary election in 2022 in an accurate and secure manner, under intense scrutiny, on a compressed and expedited timeline." *See* Declaration of Amanda Grandjean, executed on June 8, 2022 ("Grandjean Dec.") at ¶40, attached as Exhibit A.

Rather than introduce significant uncertainty just 65 days before an election, 9 days before the election effectively begins when overseas ballots are sent, and after important deadlines had already passed, the Court should deny Plaintiffs' Motion because: (1) Plaintiffs lack the constitutionally required standing to bring their claims (2) the Court should defer to the factual and legal conclusions the *Gonidakis* panel reached about the necessary timeline for the August 2 primary, (3) the *Purcell* principle precludes altering election rules on the eve of an election, and (4) that Directive 2022-034 is constitutional under the *Anderson-Burdick* analysis.

**FACTS**

### A. Overview of 2022 Redistricting Litigation

This case is an outgrowth of State of Ohio's experience with the reapportionment process over the past 10 months. Following the 2020 decennial census, the Ohio Redistricting Commission adopted a General Assembly district plan in September 2021 ("Map 1"). On September 23, 2021, various groups and individuals filed lawsuits with the Supreme Court of Ohio challenging the constitutionality of Map 1 under state law. On January 12, 2022, in a 4-3 decision, the Supreme Court of Ohio invalidated Map 1 and ordered the Ohio Redistricting Commission to be reconstituted, and adopt another district plan within 10 days that conformed to the Court majority's reading of the Ohio Constitution. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ Ohio St. 3d__, 2022-Ohio-65 (Ohio 2022).

On January 22, 2022, the Ohio Redistricting Commission adopted a second General Assembly-district plan ("Map 2"). Again, various groups and individuals challenged the new map by filing objections with the Supreme Court.

At the time, Ohio's primary election was scheduled for May 3, 2022, pursuant to R.C. 3501.01(E)(1). Pursuant to Ohio Revised Code ("R.C.") 3513.05, candidates for party nominations for election to the Ohio Senate, Ohio House of Representatives, and State Central Committee were required to file declarations of candidacy and petitions no later than 4:00 p.m. on the ninetieth day before the primary election, which was then February 2, 2022. The deadline to file for such offices as a write-in candidate was February 22, 2022. R.C. 3513.041.

With the February 2, 2022 filing deadline fast approaching, the General Assembly acted to address the uncertainty caused by the reapportionment litigation. The legislature amended and passed Substitute House Bill 93, including numerous provisions of temporary law that modified

5

various petition requirements for candidates for the U.S. House, the General Assembly, and party state central committees. These changes were designed to allow filings to be considered valid if the petitions were filed, or even circulated, before the new district plans were known. The bill relaxed requirements regarding the district number and the candidate's residence address on the filing if a new district plan changed the district number of the candidate's residence; the board of elections with which the documents were to be filed if the most populous county in a given district changed because of a new district plan; the date of the petition signatures; and where the signers resided. Sub. H.B. 93, 134th Gen. Assemb., Reg. Sess. § 4 (Ohio 2022). These portions of the bill were passed with an emergency clause and became effective immediately upon the Governor's signature on January 28, 2022, prior to the candidate filing deadline of February 2.

House Bill 93 made it clear that the Secretary of State did not have the ability to alter candidate filing deadlines or to create new filing deadlines. Sub. H.B. 93, 134th Gen. Assemb., Reg. Sess. § 4(G). The bill generally allowed the Secretary to "adjust any deadlines pertaining to the administration of the May 3rd primary election." *Id.* It also specifically excluded from this "[t]he deadline to file a declaration of candidacy, declaration of candidacy and petition, or declaration of intent to be a write-in candidate." *Id.*

On February 2, 2022, Map 2 was in place, although the Ohio Supreme Court had not yet ruled on pending objections. On February 7, 2022, a majority of Supreme Court sustained the objections relating to Map 2 and invalidated that district map. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ Ohio St. 3d__, 2022-Ohio-342 ¶ 67. The Supreme Court further ordered the Ohio Redistricting Commission to adopt a new General Assembly-district plan within 10 days.

On February 18, 2022, a group of voters sued the Ohio Redistricting Commission and the Ohio Secretary of State in the U.S. District Court for the Southern District of Ohio. The plaintiffs alleged that they lacked legislative districts that would allow them to organize, campaign and ultimately vote for offices as they had in past election cycles. *Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1175617, *8. As relief, they asked this Court to impose a legislative district map to ensure that Ohio would hold a primary election this year. *Id.*

On February 24, 2022, the Ohio Redistricting Commission adopted a third General Assembly district plan ("Map 3"). Secretary LaRose "immediately began implementing [Map 3] in hopes of including the state-legislative races on the May 3 primary ballot." *Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1175617, *8. As before, however, various groups and individuals filed objections to the new map. On March 16, 2022, a majority of the Ohio Supreme Court sustained the objections and invalidated Map 3. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ Ohio St. 3d__, 2022-Ohio-789. The Supreme Court further ordered the Ohio Redistricting Commission to adopt a new General Assembly-district plan no later than March 28, 2022.

On March 23, 2022, Secretary LaRose issued Directive 2022-31. The directive indicated that because of the uncertainty surrounding General Assembly districts and the looming start of early voting on April 5, 2022, "it is not possible to include the primary contests for the Ohio House, Ohio Senate, and State Central Committee on the May 3, 2022 Primary Election ballot" and that those races would not appear on the ballot. Directive 2022-31

On March 28, 2022, the Ohio Redistricting Commission adopted a fourth General Assembly-district plan ("Map 4"). Once again, various groups and individuals filed objections with the Supreme Court of Ohio. On April 14, 2022, a majority of the Supreme Court again

sustained the objections and invalidated Map 4.  *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ Ohio St. 3d__, 2022-Ohio-1235.  The Court further ordered the Ohio Redistricting Commission to adopt a new General Assembly-district plan no later than May 6, 2022.

The day after the Supreme Court invalidated Map 3, the plaintiffs in *Gonidakis* requested that a three-judge Panel under 28 U.S.C. § 2284 issue a preliminary injunction barring use of the 2010 maps and establishing a schedule to impose a new district map.  *Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1175617, *8. The *Gonidakis* Panel held a lengthy evidentiary hearing on March 30, where the three judges asked questions about, among other issues, how moving the primary date to August 2 would impact the February 2 candidate filing deadline.  The witnesses on behalf of the Ohio Secretary of State testified that the Secretary lacked the statutory authority to move the February 2 deadline.  Transcript of Motion for Preliminary Injunction Proceedings, Mar. 30, 2022, p. 10: 23-25;  p. 48:17-22  (2:22-cv-00773-ALM-ART-BJB, Doc #: 150.) (hereinafter "March 30 Tr.", attached as Exhibit B)  On April 20, 2022, the *Gonidakis* Panel issued the April 20 Opinion.  There, the federal court observed that "everyone agrees that legal and practical requirements preclude Ohio from holding a primary election for its state legislature on May 3, the date provided by statute." *Gonidakis v. LaRose*, No. 2:22-CV-0773, 2022 WL 1175617, *1. The Panel held out "hope that the State can resolve the deadlock," but emphasized that "the Supreme Court has told us that at some point we must intervene to protect the right to vote."  *Id.*

The *Gonidakis* Panel, however, did ***not*** order immediate relief in their April 20 Opinion and therefore did not set a new primary election date at that time.  Rather, the court foreshadowed what it would do ***if*** state officials remained unable to reach agreement on a map:  "[W]e stay our hand until May 28.  But if the State remains unable to implement its own valid map that satisfies

federal law, then we must implement Map 3 to safeguard the rights of Ohio's voters." *Id.* at 2. The court further indicated that, should that occur, it would order the state legislative primary races to be held on the special election date of August 2, 2022. *Id.* However, the *Gonidakis* Panel emphasized that these future orders ***were contingent upon future events***. *See id.* ("***If*** the State fails to act, however, this timeline will ensure Ohioans can vote in the election ….") (emphasis added); *id.* ("***In the event that Ohio does not reach a resolution*** before May 28, we will order that the state-legislative primary races be held on the special-election date of August 2, 2022.") (emphasis added).

Ohio subsequently held a primary election on May 3, 2022. The May 3 election did not include contests for the General Assembly or State Central Committee. Nor, at that time, was there a date certain for those races to appear on the ballot.

On May 5, the Ohio Redistricting Commission re-adopted and resubmitted Map 3 to the Ohio Supreme Court. Once again, various groups and individuals filed objections with the Ohio Supreme Court. On May 25, 2022, a majority of the Supreme Court sustained objections and once again invalidated Map 3. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ Ohio St. 3d__, 2022-Ohio-1727. The Supreme Court further ordered the Redistricting Commission to adopt a new General Assembly-district plan no later than June 3, 2022. The Redistricting Commission did not adopt a new plan by the June 3 deadline.

Following the Supreme Court's order again invalidating Map 3, on May 27, 2022, the *Gonidakis* Panel case ordered Secretary LaRose "to push back Ohio's state primaries to August 2, 2022, and to implement Map 3 for this year's elections ***only***." *Gonidakis v. LaRose,* No. 2:22-CV-0773, 2022 WL 1709146 *1 (emphasis in original). The *Gonidakis* Panel emphasized that it had waited "until the last possible moment," as U.S. Supreme Court precedent requires. *Id.*

The day after the *Gonidakis* Panel's May 27 Order, on May 28, 2022, the Secretary of State issued Directive 2022-34. Among other things, the directive instructed boards of elections that the federal court order "did not alter the partisan candidate filing deadlines for the primary election." Thus, declarations of candidacy for party nominations for the General Assembly or State Central Committee remained due February 2, 2022, and the write-in deadline remained February 22, 2022. *See Id.* at 2.

### B. Giroux's candidate filings in Hamilton County

On ***March 2, 2022***, Plaintiff Giroux filed her declaration of candidacy for the United States House of Representatives**.** (Stip. at. ¶12) The Hamilton County Board of Elections certified Giroux as a candidate on March 8. (Stip. at. ¶14) On ***April 25, 2022*** at 12:24 pm, Giroux filed with the Hamilton County Board of Elections a notice of withdrawal of her candidacy for the U.S. House of Representatives for the First District Congressional Race. (Stip. at. ¶33) On ***May 2, 2022*** at 11:32 a.m., Giroux filed her declaration of candidacy for the Ohio House of Representatives. (Stip. at. ¶34) On May 3, 2022, Giroux appeared on the ballot as a candidate for the United States House of Representatives for the First District. The Hamilton County Board of Elections did not count votes cast for her and placed signs at voting locations to inform voters of such. (Stip. at. ¶38) Upon learning that she would not appear on the ballot for the August 2 primary, Giroux filed this action on June 1 and sought immediate injunctive relief. (Verified Complaint, Doc. #1)

### ARGUMENT

### A. Standard for Preliminary Injunction

Plaintiffs seek injunctive relief pursuant to Federal Rule of Civil Procedure 65. To be entitled to a preliminary injunction, Plaintiffs "must establish that they are likely to succeed on the

merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest." *League of Women Voters of Ohio v. LaRose*, 489 F.Supp.3d 719, 727 (S.D. Ohio 2020) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "When evaluating these factors for an alleged constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Thompson v. Dewine*, 959 F.3d 804, 807 (6th Cir. 2020) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). But the factors are not prerequisites; rather, they must be balanced by weighing the equities involved. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

### B. Plaintiffs Fail to Demonstrate Success on the Merits

#### i. Plaintiff Giroux and Daly Lack Constitutionally Required Standing

##### a. The Constitutional Requirement of Standing

Constitutional standing requires plaintiffs to establish that "(1) they have suffered a concrete and particularized injury, whether actual or imminent; (2) the injury is traceable to some action or inaction of the defendants; and (3) a favorable judgment would redress the injury." *Libertarian Party of Ohio v. Wilhem,* 417 F.Supp.3d 982, 986 (S.D. Ohio 2019) (quoting *Morrison v. Bd. of Educ. of Boyd Cty.,* 521 F.3d 602, 608 (6th Cir. 2008)).

"At bottom the Article III standing limitation prevents a plaintiff from bringing a federal suit to resolve an issue of public policy if success does not give the plaintiff … some relief other than the satisfaction of making the government comply with the law." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 460 (6th Cir. 2014). "Standing is a 'jurisdictional' matter, and a lack of standing deprives a court of subject matter jurisdiction." *Ohio Stands Up! v. U.S. Dept. of Health*

*& Human Services*, 564 F. Supp.3d 605, 612 (N.D. Ohio 2021) (citing *Ward v. Alternative Health Delivery Sys., Inc.,* 261 F.3d 624, 626 (6th Cir. 2001)).

      **b. Plaintiffs Giroux and Daly Lack Standing because *however* this Court rules, Giroux is ineligible to be on the 2022 primary and general election ballots.**

Here, neither Giroux nor Daly suffered any injury from the Secretary of State's conduct of the primary election and issuing of Directive 2022-034. Rather, their wound was self-inflicted by Giroux's choice to first file for the U.S. House of Representatives instead of the Ohio House of Representatives. Indeed, Plaintiffs' own legal theory would *still* have Giroux ineligible to participate in the August 2 primary. Even if successful in this lawsuit, Giroux and Daly would receive no "relief other than the satisfaction of making the government comply with the law." *See Fair Elections Ohio v. Husted*, 770 F.3d at 460.

As previously mentioned, on March 2, 2022, Giroux filed a declaration of candidacy with the Hamilton County Board of Elections to be a candidate for the U.S. House of Representatives. Her filing was timely because the Ohio General Assembly had passed House Bill 93, which moved the filing deadline for U.S. Congressional candidates to March 4, 2022. Sub. H.B. 93, 134th Gen. Assemb., Reg. Sess. § 4(A). The filing deadline for candidates for the Ohio House and Senate remained as February 2, 2022. *Id.* § 4.

In its April 20 Opinion in *Gonidakis*, the Panel chose a remedy designed to give Ohio's elected leaders another chance to adopt a lawful map: "if the State remain[ed] unable to implement its own valid map that satisfie[d] federal law," the Panel would implement Map 3, the legislative district map that 86 of the 88 county boards of election had programmed into their voting systems, on May 28, 2022, and "order that the state-legislative primary races be held on the special election date of ***August 2, 2022.***" *Gonidakis v. LaRose*, Case No. 2:22-cv-0773, 2022 WL 1175617  *2,

*24 (emphasis in original); *see id.* at *30 ("So, if the State does not act before May 28, we will order the primary be moved to August 2 ....").

Thus, even though the federal three-judge *Gonidakis* Panel indicated on April 20 that on May 28, 2022, it would ***likely*** order the state legislative primary take place on August 2, the August 2 primary election did not legally come into existence until May 28, after the *Gonidakis* Panel issued its May 27 Order. The April 20 *Gonidakis* ruling was also contingent; there remained a possibility that the State would adopt a new map to which the Petitioners in the redistricting litigation would not object and the General Assembly would set via legislation a different primary date. *Id.* at *13. But as of May 28, no new map was adopted and the General Assembly did not act to set a date for a legislative candidate primary election.

Nonetheless, as noted before, on April 25 Giroux filed with the Hamilton County Board of Elections a notice of withdrawal of her candidacy for Congress, and on May 2 she filed a declaration of candidacy for the Ohio House of Representatives. Giroux's actions apparently were premised on the mistaken notion that the primary date had ***already*** been moved to August, and that the filing deadline had automatically moved with it, to May 4, 2022, which was 90 days before the August 2 primary date.[1] *See* R.C. 3513.05 (with exceptions not applicable here, declarations of candidacy for a party nomination must be filed "not later than four p.m. of the ninetieth day before the day of the primary election"). To the contrary, because the federal court did ***not*** create the August 2 legislative primary election until May 28, the filing deadline for the Ohio House remained as February 2, 2022, and Giroux's declaration of candidacy was three months late.[2]

---

[1] "[I]n light of the pronouncement and order of the three-judge *Gonidakis* Panel on April 20, 2022, JENNIFER GIROUX started circulating a petition on April 25, 2022, in order to be a candidate for state representative for the primary election of August 2, 2022." Verified Complaint ¶ 27.

[2] This assumes that the filing date ***could*** be moved along with the primary date. But, again, House Bill 93 explicitly barred the secretary of state from moving the filing deadline. *See* HB 93

      **c. Giroux's withdrawal of her candidacy for Congress does not save her eligibility for the Ohio Statehouse,** *i.e.***, her candidacy for the Statehouse was legally "dead," and cannot be revived.**

R.C. 3513.052(A) provides that "[n]o person shall seek nomination or election to any of the following offices or positions at the same election by filing a declaration of candidacy and petition, a declaration of intent to be a write-in candidate, or a nominating petition, or by becoming a candidate through party nomination in a primary election, or by the filling of a vacancy under section 3513.30 or 3513.31 of the Revised Code." R.C. 3513.052(A)(4) then specifically precludes running for "a federal office and a state or county office" at the same election.

R.C. 3513.052(G) allows a narrow exception to the foregoing by prohibiting disqualification of a candidate for an office if that person "timely withdraws" as a candidate for any other office for which that person first sought to become a candidate. In the context of this case, "'[t]imely withdraws' means … [w]ithdrawing as a candidate before the applicable deadline for filing a declaration of candidacy … for the subsequent office for which the person is seeking to become a candidate at the same election," which was the February 2 deadline for the Ohio House. R.C. 3513.052(H)(2)(a).

Here, Giroux did not "timely withdraw" her declaration of candidacy for the U.S. House of Representatives because her withdrawal was not "before the applicable deadline" for running for State Representative. As noted before, it was not until May 27, 2022 that the three judge *Gonidakis* Panel entered its order establishing the August 2 primary. And, until the Court acted

---

Section4(G)(1) (the secretary of state may adjust any deadlines pertaining to the administration of the May 3, 2022 primary *except* for the deadline to file a declaration of candidacy, declaration of candidacy and petition, or declaration of intent to be a write-in candidate). And had the Secretary declared after the three-judge *Gonidakis* Panel issued its May 27 Order setting the August 2 primary that May 4 is a new filing deadline, then he would have been unlawfully – and retroactively-creating a new filing deadline that the General Assembly did not legislate. *See* R.C. 3501.40.

on May 27, the filing deadline for candidates for the Ohio House remained as February 2, 2022. Therefore, Giroux's April 25, 2022 withdrawal of her candidacy for the U.S. House was **un**timely, *i.e.,* it was months too late for R.C. 3513.052(G) to save her candidacy. ***Her candidacy was legally "dead," and cannot be revived***

Accordingly, Giroux is ineligible to run for the Ohio House in 2022 ***however*** this Court rules on her challenge to Directive 2022-34. As such, both Giroux and Daly lack the constitutionally required standing to bring this case.[3]

Additionally, Daly lacks standing for the additional reason that she has not suffered a concrete and particularized injury. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). An alleged injury based solely on an allegation, such as Daly's, that the law has not been followed, "amounts to an 'undifferentiated, generalized grievance about the conduct of government' insufficient to establish standing." *Lance v. Coffman*, 549 U.S. 437, 442 (2007). This provides an additional reason why Daley's complaint must be dismissed.

## ii. This Court should defer to the *Gonidakis* Panel, which intentionally maintained the February 2 filing deadline.

Plaintiff essentially asks this Court for a "do over" of portions of the Panel's decision in *Gonidakis*. As mentioned, the *Gonidakis* Panel did not move the February 2 filing deadline in either its April 20 Opinion or the May 27 Order. That was not an oversight, but a well-reasoned conclusion from significant testimony at the March 30 Hearing about candidate filing deadlines. The *Gonidakis* Panel dedicated nearly 36 pages of the 249 page transcript to discussing the filing deadline for candidates for the Ohio House of Representatives, Ohio Senate, and party state central

---

[3] By Giroux's own admission, Daly's standing is contingent on Giroux's being a candidate for the statehouse. *See* Verified Complaint ¶ 30.

committees. *See* March 30 Tr. P. March 30 Transcript at p. 20: 8 - 24; p. 28: 18-25; p. 29: 1-25; p. 30: 1-25; p. 42: 16-25; p. 43: 1-21; p. 48: 1-25; p. 53: 19-25; p. 60: 3-25; p. 61: 21-25; p. 62: 3-12; p. 74: 2-25; p. 85: 1-25.

For example, the *Gonidakis* Panel questioned Mr. Blanton, counsel for Secretary LaRose, about the impact of moving the primary on the filing day:

> JUDGE BEATON: So the status quo, as it exists today, is that your boss or your client is going to send out ballots for all the other primary elections on Monday.
>
> MR. BLANTON: Yes, Your Honor.
>
> JUDGE BEATON: Unless we say otherwise.
>
> MR. BLANTON: You're correct. The boards will do that, or the GA.
>
> JUDGE THAPAR: Let me give you a clue. We ain't saying otherwise.
>
> MR. BLANTON: Much appreciate it in terms of clarity. Having talked with the secretary, I have an understanding of the secretary's preferred courses of action. One, based on Judge Thapar, Judge Beaton -- the *Gonidakis* Panel's instruction is I understand not likely to occur, the secretary's preference in terms of elections administration and simplicity would be a unified primary on May 24 using map three. In terms of elections going forward, if the primary does not take place in a unified fashion on May 24th, from an elections administration perspective in terms of simplicity, in terms of taking the greatest advantage of work already done by the boards, and in terms of providing the State of Ohio with the -- the legislature and the Commission with the longest possible time to engage in additional - assuming map four does not survive - additional mapmaking opportunities and the opportunity to complete that and the work that goes into it, the secretary would prefer to use map three for the later primary. That would, in terms of timing, allow for the use of the more compressed time frame because the map three calendar would be a continuation of what has already been done. ***So it wouldn't be reopening candidate filing. It wouldn't be reopening the certification of candidates and petitions which is that 90-day window.*** We would be back down more to about a 55-day window, 46 of which is UOCAVA, and then the administration ahead of that affords the opportunity to handle protests, to do programming, to do clean up. And that puts, assuming the Court were to order -- and, again, the secretary's preference is not to have a primary this late. If this Court orders an August

2nd backstop primary, then that would put us at roughly June 8th being the 55-day trigger when we would need a map

(March 30 Hearing Tr, p. 75: 13-25;  p. 77: 1-4) (emphasis added).

Further testimony by Amanda Grandjean, Deputy Assistant Secretary of State and Director of Elections, established that the Ohio Secretary of State Office understood that the Ohio General Assembly intended to keep the filing deadline for Ohio House of Representatives, Ohio Senate, and party state central committees on February 2:

> JUDGE BEATON: Does that include a period for candidates? I think we've been focused more on what the voters receive in a ballot, but what has to happen -- or does your answer include the steps that would need to happen in order for candidates to decide I'm running, I'm running in this district, I'm filing my paperwork? Is that embraced in this 60 days?....

> [Interruption for buzzer going off]

> ……MS. GRANDJEAN: I understand we're dealing in a hypothetical world right now. So I guess let me say this. There are -- there would need to be temporary law passed or this Court ordering our ability to have flexibility within current law that doesn't exist that sets these rigid timelines. And the filing deadline for candidates is 90 days before an election.

> JUDGE THAPAR: If they don't know their districts, how can they –

> MS. GRANDJEAN: That's right.

> JUDGE MARBLEY: Have most candidates who intend to run, to your knowledge, already filed, though, based on the view that there would be a May 3rd election?

> THE WITNESS: So the -- specifically, the filing deadline in the State of Ohio was only changed by the General Assembly for congressional candidates. That was changed in Senate Bill 258 to March 4th. That was a 60-day filing deadline, *Your Honor. The rest of the candidates did receive the 90 day. And that filing deadline was on February 2nd of this year.* That was premised -- that filing deadline was premised on the January 22nd map that the Ohio Redistricting Commission passed that they filed under that. The general assembly came back then and passed House Bill 93 that altered the filing rules, meaning that they inserted a transfer provision and other qualifiers to essentially grandfather in those petitions, if that makes sense.

> JUDGE BEATON: So a new map under House Bill 93 wouldn't wipe out the people who have declared, though it could create districts in which no one has declared or

in which people would declare but they haven't had a chance to already. So would there need to be some abbreviated period for new candidates?

MS. GRANDJEAN: *That is up to the lawmakers, the general assembly, to determine what is best policy*….

(March 30 Hearing Tr, p. 20: 15-25; p. 22: 23).

Ms. Grandjean then cautioned the *Gonidakis* Panel about the risks of changing filing deadlines:

JUDGE MARBLEY: How much additional time would we need to build in if we were trying to make sure that persons who now are eligible to run wanted to run?

MS. GRANDJEAN: So effectively would the filing deadline be reopened?

JUDGE MARBLEY: Yes. If we wanted to include a new filing deadline for new candidates, how much time would we need to allot for that?

MS. GRANDJEAN: Well, as I said, that typically starts 90 days before, but –

JUDGE MARBLEY: But going to Judge Thapar's paradigm, what's the least amount of time that we can give for a new candidate?

MS. GRANDJEAN: Just repeating the facts. An entirely new map, an open filing deadline. Is the fourth map final?

JUDGE MARBLEY: Let's say the fourth map is out, this *Gonidakis* Panel's map; so it's final.

MS. GRANDJEAN: Then I think a range of what we discussed from –

JUDGE THAPAR: Seventy-four to 90?

MS. GRANDJEAN: Yes. But I think, again, the more we expedite -- I feel the *Gonidakis* Panel needs to hear this. The more we expedite, the more risk we insert into the process.

JUDGE THAPAR: Aren't we past worrying about risk at this point?

MS. GRANDJEAN: As the director of elections, I'm never past worrying about risk.

> JUDGE THAPAR: I appreciate that. But could we do it with 74 days? If we said 74 days out, map X has to be put in place, candidates have to be able to file, everything has to be able to happen, we could do it?
>
> MS. GRANDJEAN: Yes.
>
> JUDGE THAPAR: An ideal world is 90 days?
>
> MS. GRANDJEAN: An ideal world in the regular ordinary course of an election calendar is 90 days.

(March 30 Hearing Tr, p. 28: 18-25; p. 30: 1-2)

Based, in part, on this testimony, the *Gonidakis* Panel adopted Map 3 for the coming election both because 86 of the 88 county boards of election had already used it to program their voting systems, and because "some of the statutory periods have already gone into effect under Map 3, such as the 30 days for candidates to move and 90 days to register." *Gonidakis*, No. 2:22-CV-0773 at *24 (April 20 Opinion).  And the Court further cautioned:

> And while we have no choice but to move the primary date, we should disturb state election deadlines and procedures as little as possible…. The Ohio Elections Calendar weaves together countless intricate and interdependent dates and procedures. Judges simply cannot know all the consequences when we start tugging on those strings. We can only be confident that our intervention *will* disrupt the system in ways known and unknown—which is why we must leave the state electoral process intact as much as we can."

*Gonidakis,* No. 2:22-CV-0773 at *22.  And, just like Deputy Secretary of State Grandjean warned the *Gonidakis* Panel, granting Plaintiffs' last minute request would create "significant, and potentially disastrous, risks to the election administration process and for the local boards of elections that are making their best efforts to administer an additional, unplanned, statewide primary election in 2022 in an accurate and secure manner, under intense scrutiny, on a compressed and expedited timeline."  *See* Grandjean Dec. at ¶40.  The *Gonidakis* Panel carefully considered moving the February 2 filing deadline, but chose not to.  This Court should defer to the *Gonidakis* Panel's well-reasoned decision.

### iii. *Purcell* precludes this Court's election eve "tugging on strings," that would interfere with the orderly and effective administration of the primary election that actually begins on June 17.

"[The U.S. Supreme] Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Kishore v. Whitmer*, 972 F.3d 745, 751 (6th Cir. 2020) (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, ___ U.S. ___, 140 S. Ct. 1205, 1207 (2020)); *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). *See also, Frank v. Walker*, 574 U.S. 929, 929 (2014) *(Alito, J.*, dissenting an order granting a stay); *Veasey v. Perry*, 574 U. S. 951 (2014).

Here, any order by the Court – even one that may seem harmless – could pose severe problems for the orderly administration of the August 2 Primary Election. "Even seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences." *Democratic Nat'l Comm. v. Wisconsin State Legislature*, ___ U.S. ___, 41 S. Ct. 28, 31 (2020) (*Kavanaugh, J.*, concurring in denial of application to vacate stay). Last-minute judicial interference with elections can confuse voters and election administrators alike. *Id*. Echoing Justice Kavanaugh, the Sixth Circuit has noted that "[r]ewriting a state's election procedures or moving deadlines rarely ends with one court order. Moving one piece on the game board invariably leads to additional moves…. And moving or changing a deadline or procedure now will have inevitable, other consequences." *Thompson v. DeWine*, 959 F.3d 804, 813 (6th Cir. 2020).

This Court, too, has sought to avoid the deeply disruptive effects of last-minute judicial intervention. It has previously cautioned that "[w]hile there is still a month to go before the election, issuing an injunction now would create a major rule change for both Defendant and local boards of elections to adjust to while pre-election activities are ramping up. The State has been

accepting absentee ballot applications for months, and the ballots themselves will soon be mailed." *League of Women Voters of Ohio v. LaRose*, 489 F. Supp. 3d 719, 741 (S.D. Ohio 2020).

The *Gonidakis* Panel based its decision largely on the principle of noninterference with state elections, holding that "the state-legislative primary must be held on August 2. That is the last date, according to Secretary LaRose, when his office could hold a primary election without disrupting the general election." *Gonidakis v. LaRose*, S.D. Ohio No. 2:22-CV-0773, 2022 WL 1175617, *23. Further, the *Gonidakis* Panel's Opinion, invoking *Purcell* and highlighting the dangers of last minute election changes, unequivocally stated that the court could not "wait any later than May 28 [to implement the chosen map] without jeopardizing the right to vote, overriding a host of state election laws and deadlines, and inviting the electoral chaos and confusion that the U.S. Supreme Court has repeatedly instructed lower courts to avoid." *Id.* at 2.

Federal judicial intervention would severely impede the orderly and effective administration of the August 2 primary election, ***which actually starts on June 17*** with the mailing of ballots to military and overseas civilian personnel. Declaration of Amanda Grandjean, sworn to June 8, 2022 ("Grandjean Dec.") ¶ 35; *Voting Schedule for the 2022 Elections*, Frank LaRose: Ohio Secretary of State, https://www.ohiosos.gov/elections/voters/current-voting-schedule/2022-schedule/. Further, early in-person voting and absentee voting by mail begin on July 6. *Voting Schedule for the 2022 Elections*, Frank LaRose: Ohio Secretary of State, https://www.ohiosos.gov/elections/voters/current-voting-schedule/2022-schedule/.

Under Ohio law, the boards of election must have the ballots that go to overseas military and civilian personnel ("UOCAVA ballots") ready by no later than 46 days before an election, which, based on the federal court ordering an August 2 primary election, is June 17. Ohio Rev. Code §3511.04; Grandjean Dec. ¶ ¶ 15, 33, 35.

21

To ensure that UOCAVA ballots go out on time, Directive 2022-34 seeks to have the candidates finalized no later than June 10, 2022.  Grandjean Dec. ¶ 34.  This entails boards of elections certifying candidates' petitions as valid, allowing protests against certified candidates to be filed with the boards, protests scheduled and heard by the boards, and protests decided by the boards.  Grandjean Dec. ¶ 31. In an already severely compressed election timeline, opening the door to additional candidates would only result in pure chaos on an orderly administration of the primary election.

A prior directive, Directive 2022-28, set March 14, 2022 as the deadline for boards to certify (or not certify) the General Assembly candidates who filed by February 2.  Grandjean Dec. ¶ 25.  Directive 2022-34 directs the boards to re-certify the same candidates by *five days ago*, on June 3. Grandjean Dec. ¶ 34.  For any candidates who filed by February 2 but who, because of the changes from Map 2 to Map 3, indicated by March 10 that they were going to move into a new district, the boards must certify (or not certify) those candidates by June 8.  Grandjean Dec. ¶ 34; OHIO CONST. art. XI, § 9(C),

There simply is not enough time to get "new" candidates, *i.e.*, anyone who did not file a declaration of candidacy for an Ohio House or Senate seat by February 2 (or who did not file by February 22 to be a write-in candidate in one of the parties' primaries) through the certification and finalization process by June 10.  Grandjean Dec.¶ 34.  The eighty-eight county boards of elections are only able to prepare the ballot with the names of existing candidates because so much of this work was done by the boards in March.  Grandjean Dec. ¶ 36. Because of the tight timeframe, the state's compelling interest in orderly elections administration outweighs any conceivable benefit from the relief sought, ordering the Secretary to retroactively create a new filing deadline to put "new" candidates on the ballot.  Grandjean Dec. ¶¶ 36-37.

22

### a. Directive 2022-34 is Constitutional Under *Anderson-Burdick*

This Court need only address the *Anderson-Burdick* analysis if Plaintiff first clears two hurdles: (1) that plaintiffs have standing, and (2) that *Purcell* does not apply. However, if the Court needs to reach the *Anderson-Burdick* analysis, Directive 2022-34 still must be found constitutional.

The *Anderson-Burdick* framework is a constitutional test governing First and Fourteenth Amendment challenges to election-related regulations, including ballot-access restrictions. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Under that framework, "the rigorousness of [a court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434. *Anderson-Burdick* is premised on the idea that "[t]he right to vote in any manner and the right to associate for political purposes through the ballot [are not] absolute," and that "[s]tates retain the power to regulate their own elections." *Kishore v. Whitmer*, 972 F.3d 745, 749 (6th Cir. 2000) (quoting *Burdick*, 504 U.S. 428, 433 (1992)).

In this circuit, where there is a minimal burden on a plaintiff's rights, courts apply rational-basis review. Where there is an intermediate burden, courts balance the interests of the state with the interests of the plaintiff. Where there is a severe burden, courts apply strict scrutiny. *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020).

The court utilizes a three step approach to *Anderson-Burdick*. First, the court assesses the degree to which the regulation burdens the rights of a plaintiff. *Kishore v. Whitmer*, 972 F.3d 745, 749. Second, the court evaluates the state's justification for the regulations. *Id.* at 750. Third, a

court considers whether the state's justifications are constitutionally valid given its interests. *Id.* at 751.

### 1. As a reasonable, nondiscriminatory regulation, Directive 2022-34 imposes only a minimal burden.

To determine whether a regulation imposes a severe burden, courts consider "content-neutrality and alternate means of access." *Daunt v. Benson*, 999 F.3d 299, 311 (6th Cir. 2021). "A law would not be content-neutral, and would thus impose a severe burden, if it "limit[ed] political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Citizens for Legis. Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (quoting *Anderson*, 460 U.S. 780, 793). And a law would impose a severe burden if it left "few alternate means of access to the ballot," "restrict[ing] 'the availability of political opportunity.'" *Id.* (quoting *Anderson*, 460 U.S. 780, 793).

Here, Plaintiffs do not allege that Directive 2022-34 is not content neutral, nor do they allege that it targets an identifiable political group, viewpoint, associational preference, or economic status. Directive 2022-34 applies to Plaintiff and her potential supporters in the same way that it applies to all potential candidates and voters in the state. Further, Directive 2022-34 does not restrict the availability of political opportunity, and Plaintiff had full access to the General Assembly ballot prior to February 2, the statutory filing deadline for the May 3, 2022 primary. Grandjean Decl. ¶ 11, 12; R.C. 3513.05. Instead of availing herself of the opportunity to run for General Assembly, Giroux first filed a declaration of candidacy for the United States House of Representatives. Giroux could have filed for the statehouse by the February 2 deadline, but chose instead to run for a different office.

Because the regulation here is neutral and the State's regulatory structure gave Plaintiff unfettered access to the ballot (provided that she met the February 2 deadline and other reasonable

ballot access requirements), the burden imposed by Directive 2022-34 on her and her supporters was minimal. The Directive is therefore is subject to rational-basis review.

Indeed, courts have repeatedly upheld ballot access restrictions that, as here, are content neutral and leave sufficient alternate means of ballot access. *See Burdick v. Takushi*, 504 U.S. 428 (1992) (upholding Hawaii ban on write-in votes); *Kowall v. Benson*, 18 F.4th 542 (6th Cir. 2021) (upholding Michigan term limits that prevented some individuals from appearing on the ballot); *Hawkins v. DeWine,* 968 F.3d 603 (6th Cir. 2020) (upholding Ohio ballot access limitations in the context of COVID-19 restrictions); *Kishore v. Whitmer*, 972 F.3d 745 (6th Cir. 2020) (upholding Michigan ballot access limitations in the context of COVID-19 restrictions); and *Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998) (upholding Michigan term limits that prevented some individuals from appearing on the ballot).

### 2. The State has compelling justifications for implementing these reasonable ballot access regulations.

As discussed above, Directive 2022-34 is necessary for the orderly conduct of the August 2 primary election. Under Ohio law, boards of election must have the ballots that go to military and overseas civilian personnel ("UOCAVA ballots") ready by no later than 46 days before an election, which, based on an August 2 primary election, is June 17. R.C. 3511.04; Grandjean Dec. ¶ ¶ 15, 33, 35. Accordingly, Directive 2022-34 is needed to ensure that boards of election have candidates finalized no later than June 10, 2022. Grandjean Dec. ¶ 34. This entails boards of elections certifying candidates' petitions as valid, time for the filing of protests, scheduling of hearings and decisions by boards of elections. *Id.*

There simply is not enough time to get any candidates who did not file by February 2 (or by February 22 to be a write-in candidate in a party primary) through the process by June 10. Grandjean Dec. ¶ 37. The eighty-eight county boards of elections are only able to prepare the

ballot with the names of existing candidates in this compressed time frame because they did so much of this work in March. Grandjean Dec. ¶ 36. Because of the tight timeframe, the state's compelling interest in orderly elections outweighs any benefit that could possibly flow from ordering the Secretary to retroactively create a new filing deadline to put additional candidates on the ballot. Grandjean Dec. 36-37.

### 3. Even if intermediate, any burden on Plaintiffs is outweighed by the State's important regulatory interests

Even if the burdens on the plaintiffs were intermediate rather than minimal, they pale in comparison to the government's "important regulatory interests" in ensuring the successful, effective, and smooth administration of a primary election that has already been severely delayed. *Thompson v. Dewine*, 959 F.3d 804, 808. As noted before, it was Giroux's choice to run for one office and then another. The State, by contrast, cannot choose. It must send absentee ballots to service members and overseas civilian voters by June 17. To do otherwise would violate the law and damage the integrity of Ohio's elections. R.C. 3511.04; Grandjean Dec. ¶ 40.

### b. Plaintiffs Fail to Establish Irreparable Harm

In deciding whether to enter a preliminary injunction, the Court must also consider whether Plaintiffs will suffer irreparable harm should injunctive relief be denied. "[I]rreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378, 391 (6th Cir 2020) (finding no irreparable harm in *Anderson-Burdick* challenge). Here, there is virtually no risk of irreparable harm because, for reasons already discussed, Giroux is not eligible for the August 2 ballot, ***however*** the Court rules.

### c. The Public Interest Weighs against a Preliminary Injunction

The last consideration requires this Court to balance the equites, not only between the parties, but for the public as well.  When addressing public equities, the Sixth Circuit has recognized that "[the Supreme] Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Kishore v. Whitmer*, 972 F.3d 745, 751 (citing *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, —— U.S. ——, 140 S. Ct. 1205, 1207 (2020)); *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  Here, any order by the Court could place severe problems on the orderly procession of the August 2 Primary would facilitate a grave risk of voter confusion. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). *A. Philip Randolph Inst. of Ohio v. LaRose*, 831 F. App'x 188, 192 (6th Cir. 2020).

## <u>CONCLUSION</u>

For these reasons, Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Doc. # 3) should be **DENIED.**

Respectfully submitted,

_____
Mark D. Wagoner, Jr., Trial Attorney (0068577)
David F. Axelrod (0024023)
Krystina A. Garabis (100120)
SHUMAKER, LOOP & KENDRICK, LLP
41 South High Street
Suite 2400
Columbus, Ohio 43215
Telephone:  (614) 463-9441
Fax:  (614) 463-1108
mwagoner@shumaker.com
daxelrod@shumaker.com
kgarabis@shumaker.com

Counsel for Ohio Secretary of State
Frank LaRose

27

## CERTIFICATE OF SERVICE

The undersigned does hereby certify, in compliance with Rule 65(b) of the Federal Rules of Civil Procedure, that a true and accurate copy of the foregoing Ohio Secretary of State Frank LaRose's Memorandum in Opposition to Motion for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction was or will be served by email on the 8th day of June, 2022, upon the following:

Curt C. Hartman, Esq.
The Law Firm of Curt C. Hartman
7394 Ridgepoint Drive, Suite 8
Cincinnati, Ohio 45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Christopher P. Finney, Esq.
Finney Law Firm LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, Ohio 45245
(513) 943-6650
*chris@finneylawfirm.com*

*Counsel for Jennifer Giroux and
Lisa Daly*

David T. Stevenson, Esq.
Jesse Kathryn Daley, Esq.
Pamela J. Sears, Esq.
Office of the Hamilton County Prosecutor
230 East 9th Street, Suite 4000
Cincinnati, Ohio 45202
(513) 946-3120
*dave.stevenson@hcpros.org*

*Counsel for the Hamilton County
Board of Elections*

_____
Mark D. Wagoner, Jr.