## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **JENNIFER GIROUX,** *et al.,* | ⋮ | **Case No. 1:22-CV-309** |
| | ⋮ | |
| **Plaintiffs,** | ⋮ | **Judge Cole** |
| | ⋮ | |
| **v.** | ⋮ | **REPLY MEMORANDUM IN** |
| | ⋮ | **SUPPORT OF MOTION FOR** |
| **FRANK LaROSE,** *individually and in his* | ⋮ | **TEMPORARY RESTRAINING** |
| *official capacity as Ohio Secretary of State,* | ⋮ | **ORDER, PRELIMINARY** |
| *et al.,* | ⋮ | **INJUNCTION, AND PERMANENT** |
| | ⋮ | **INJUNCTION (Doc. No. 3)** |
| **Defendants.** | ⋮ | |

Plaintiffs JENNIFER GIROUX and LISA DALY hereby tender the following reply memorandum in support of the *Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction* (Doc. No. 3, PageID#52-67).

## REPLY MEMORANDUM IN SUPPORT

While Secretary LAROSE might now attempt to put forth a hodgepodge of various procedural arguments, he conveniently ignores and does not even acknowledge or directly address the actual substantive issue before this Court, *i.e.*, whether or how the 6-month candidate-filing deadline that he has personally imposed through *Directive 2022-34* satisfies the requirements of *Anderson-Burdick*. Thus, while state law imposes a 90-day candidate-filing deadline (R.C. 3513.05) and the just-complete primary on May 3 was conducted including a 60-day candidate-filing deadline (*see Stipulations ¶13* (filing deadline of March 4 for the primary election of May 3)), Secretary LAROSE now implicitly claims that the 6-month candidate-filing deadline which he has unilaterally imposed is absolutely necessary and constitutionally justified, notwithstanding the direct infringement of the fundamental constitutional rights of Ms. GIROUX and her supporters,

including Ms. DALY. *See Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983)("[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights"); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)(laws restricting candidate or political party access to the ballot "place burdens on two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms"). With Secretary LaROSE failing to directly address the 6-month candidate-filing deadline, Ms. GIROUX and Ms. DALY have clearly established a sufficient likelihood of success on the merits, as well as the other pertinent factors, to warrant immediate injunctive relief for the protection of their fundamental constitutional rights and the rights of the voters in general.

In addition to ignoring that this case challenges the 6-month candidate-filing deadline that he has personally imposed, Secretary LaROSE also conveniently fails to acknowledge or appreciate a fundamental principle of state election law clearly and repeatedly pronounced by the Ohio Supreme Court that further undermines his effort to unilaterally impose the 6-month candidate-filing deadline: "courts must liberally construe election laws in favor of persons seeking to hold public office to avoid restricting the right of electors to choose from all qualified candidates." *State ex rel. Lynch v. Cuyahoga Cty. Bd. of Elec.*, 80 Ohio St. 3d 341, 686 N.E.2d 498, 1997-Ohio-339; *accord State ex rel. Davis v. Summit Cty. Bd. of Elec.*, 137 Ohio St. 3d 222, 998 N.E.2d 1093, 2013-Ohio-4616 ¶23. And while Secretary LaROSE might conveniently ignore such a principle of state election law, this Court must proceed in full deference to that principle. *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)("[i]n construing questions of state law, the federal court must apply state law in accordance with the controlling

decisions of the highest court of the state").

The *sine qua non* of Secretary LAROSE's entire position and argument appears to be the premise that "the *Gonidakis* Panel did not move the February 2 filing deadline in either its April 20 Opinion or the May 27 Order." *Memorandum in Opposition, at 15* (PageID#146). In fact, Secretary LAROSE goes so far as to wrongfully and inaccurately claim that "the *Gonidakis* Panel found, in both its April 20 and May 27 Orders, that it was too late to move the February 2 filing deadline." *Memorandum in Opposition, at 2* (PageID#133). But the *Gonidakis* Panel never made any such finding vis-à-vis the filing deadline of February 2; what the Panel actually established was limited to two matters: (i) that the primary election for the Ohio General Assembly would be August 2, 2022; and (ii) which state legislative district maps would be used for that primary election and the ensuing general election.

In mischaracterizing what the *Gonidakis* Panel actually ordered, Secretary LAROSE wrongfully treats the filing deadline as a specific and fixed date, *i.e.*, February 2. But state law does not establish the filing deadline in such a manner; instead, state law correlates the filing deadline to the day of the primary election (whatever that day may be). *See* R.C. 3513.05 ("[e]ach person desiring to become a candidate for a party nomination at a primary election … shall, not later than four p.m. of the ninetieth day before the day of the primary election, file a declaration of candidacy and petition"). Furthermore, several other provisions of state election law similarly tie certain deadlines or requirements to the day of the election; such provisions include deadlines or requirements for UOCAVA compliance, campaign finance filing deadlines, voter registration deadlines, early voting timing, *etc.* Yet, even though "the day of the primary election" is now clearly established as August 2, Secretary LAROSE has pegged only the state legislature candidate

filing deadlines as though "the day of the primary election" is still and always has been May 3,[1] while, with respect to all other deadlines or requirements pegged to "the day of the primary election" or comparable language, he conveniently acknowledges that day to be August 2.[2]

As developed the *Motion for Temporary Restraining Order, etc.* (Doc. No. 3, PageID#52-67), there is no justification for Secretary LAROSE to selectively, though contradictorily, use phrase "the day of the primary election" to impose a 6-month candidate-filing deadline with the attendant infringement of the constitutional rights of Ms. GIROUX and her supporters, including Ms. DALY. Ms. GIROUX complied with state law that required the filing of her declaration of candidacy and petition be filed no later than "the ninetieth day before the day of the primary election". Having complied with the requirements of state election law, the actions of Secretary LAROSE of now imposing a 6-month candidate-filing deadline impermissibly violates and

---

[1]    As early as March 23, Secretary LAROSE publicly pronounced that the day of the primary election for, *inter alia*, state representative would no longer be May 3. *See Directive 2022-31* (*Stipulations ¶26*)("offices and candidates for Ohio House, Ohio Senate, or State Central Committee will not appear on the ballot [on May 3]"). In fact, he specifically directed the boards of election to "prominently display notice on their website" that "the offices of Ohio House, Ohio Senate and State Central Committee will not appear on the May 3, 2022 Primary Election ballot. Voter district information for Ohio House, Ohio Senate, and State Central Committee will be updated as soon as that information is available." *Id.* And Secretary LAROSE also decreed on that day that the certification or rejection of any candidates for those offices were "by operation of law…null and void".

Having publicly pronounced on March 23 that May 3 was no longer the primary election day for, *inter alia*, state representative, Secretary LAROSE provided no indication or suggestion that he was still treating May 3 as "the day of the primary election" as used in R.C. 3513.05 with respect to the candidate-filing deadline for offices not even appearing on the ballot. At a minimum, as of March 23, there was no primary date for state representative and, accordingly, no corresponding filing deadline pursuant to R.C. 3513.05.

[2]    A summary of this arbitrary Janus-faced application by Secretary LAROSE of the concept of "the day of the primary election" or comparable language as used throughout state election law to established various deadlines is included in the Appendix hereto. Secretary LAROSE has never explained why the same or similar phrase used throughout the state election means two completely different dates, *i.e.*, according to Secretary LAROSE, sometimes the phrase means May 3 (even to this day) whereas in other instance the phrase means August 2.

burdens the fundamental constitutional rights of Ms. GIROUX and her supporters, including Ms. DALY. As developed below, Secretary LAROSE has failed to offer any legitimate and well-founded argument to the contrary.

I. **Plaintiffs Giroux and Daly Have Standing to Challenge the 6-month candidate-filing deadline imposed by Secretary LaRose through Directive 2022-34.**

A. **Ms. Giroux does not fall within the prohibition of state law concerning a candidate seeking multiple offices at the same election.**

Making much ado about Ms. GIROUX's previous filing (and subsequent withdrawal) as a candidate for Congress, Secretary LAROSE claims that Ms. GIROUX and Ms. DALY have not suffered the requisite injury so as to afford them standing to challenge *Directive 2022-34. See Memorandum in Opposition, at 12-15* (PageID#143-46). Essentially, Secretary LAROSE argues that, under state election law, Ms. GIROUX would be ineligible to appear on the ballot at the forthcoming primary on August 2 even if the Court invalidates the 6-month filing deadline established by Secretary LAROSE in *Directive 2022-34.*

The basis for this argument by Secretary LAROSE is a provision of state election law which prohibits a candidate from seeking election to more than one office at the same election. But, Secretary LAROSE conveniently glosses over the express language of the statute:

> No person shall seek nomination or election to any of the following offices or positions _at the same election_ by filing a declaration of candidacy and petition… A federal office and a state or county office.

R.C. 3513.052(A)(4)(emphasis added). "The statute is expressly directed to forbidding persons to seek *multiple offices* at *the same election*." *State ex rel. Canales-Flores v. Lucas Cty. Bd. of Elec.*, 108 Ohio St. 3d 129, 841 N.E.2d 757, 2005-Ohio-5642 ¶34 (emphasis in original and added).

Ms. GIROUX's short-lived congressional candidacy was for the primary election held on May 3, 2022. *Stipulations ¶¶14 & 37.* The effort and relief pursued in this case is to have Ms.

GIROUX's name appear on the ballot as a candidate for state representative at the forthcoming primary election of on August 2, 2022. Thus, Ms. GIROUX is not seeking "multiple offices at the same election" and, thus, the statute upon which Secretary LAROSE attempts to rely to challenge the standing of Ms. GIROUX or Ms. DALY is not even applicable. *See also State ex rel. Coble v. Lucas Cty. Bd. of Elec.*, 130 Ohio St. 3d 132, 956 N.E.2d 282, 2011-Ohio-4550 ¶34 (in addressing R.C. 3513.052, recognizing decision was "consistent with our duty to liberally construe words limiting the right of a person to hold office in favor of those seeking to hold office so that the public may have the benefit of choice from all qualified persons" (quoting *State ex rel. Reese v. Cuyahoga Cty. Bd. of Elec.*, 115 Ohio St.3d 126, 873 N.E.2d 1251, 2007-Ohio-4588 ¶34)).[3]

Even if *arguendo* R.C. 3513.052 prohibits Ms. GIROUX from being a candidate at two different elections, *i.e.* the election on May 3 and the election on August 2, Ms. GIROUX has satisfied the safe harbor provisions therein:

> a board of elections shall not disqualify, a person from being a candidate for an office, if that person timely withdraws as a candidate for any offices specified in division (A) of this section for which that person first sought to become a candidate by filing a declaration of candidacy and petition…

R.C. 3513.052(G). In turn, R.C. 3513.052(H)(2)(a) defines "timely withdraws" to include "[w]ithdrawing as a candidate before the applicable deadline for filing a declaration of candidacy …for the subsequent office for which the person is seeking to become a candidate at the same

---

[3]     Additionally, Ms. GIROUX and Ms. DALY still have standing as the HAMILTON COUNTY BOARD OF ELECTIONS rejected Ms. GIROUX's declaration of candidacy and petition based solely upon the candidate-filing deadline decreed by within *Directive 2022-34* as the declaration of candidacy and petition was filed after February 2, 2022; the rejection was not based upon the prohibition in R.C. 3513.052(A)(4). *Stipulations ¶43; see Stipulations ¶44* (video of meeting from 18:48 to 19:33 wherein explanation of rejection is "based on advice we received from counsel, as well as the directive from the Secretary to reject these, I don't think we have any choice but to reject them. So, I'll move that we reject these five candidate petitions"). And, under R.C. 3501.39(B), the BOARD OF ELECTIONS cannot now reject a candidacy *sua sponte* including, based upon the prohibition in R.C. 3513.052(A)(4) even if it was *arguendo* applicable.

election."

Notwithstanding this definition reiterates that the statute deals with seeking multiple offices "at the same election", when Ms. GIROUX withdrew as a congressional candidate on April 25, *see Stipulations ¶31*, Secretary LAROSE had already decreed that "offices and candidates for Ohio House, Ohio Senate, or State Central Committee will not appear on the ballot [on May 3]." *Directive 2022-31; Stipulations ¶26.* Additionally, Secretary LAROSE also pronounced that "by operation of law, a board's decision to certify or reject those candidates' petitions for the May 3, 2022 Primary Election is null and void." *Directive 2022-31; Stipulations ¶26.*

As for what constitutes the "applicable deadline for filing a declaration of candidacy" as used in R.C. 3513.052(H)(2)(a) or elsewhere in the Revised Code, such a phrase or concept must be read *in para materia* with the candidate-filing deadline provided for in R.C. 3513.05: "Each person desiring to become a candidate for a party nomination at a primary election … shall, not later than four p.m. of the ninetieth day before the day of the primary election, file a declaration of candidacy and petition." While, on April 25 when Ms. GIROUX withdrew as a congressional candidate, no definitive primary election date even existed (a fact recognized by Secretary LAROSE), once the *Gonidakis* panel established August 2 as the primary date, then the ninetieth day before the day of the primary election could readily be determined, *i.e.*, May 4, and Ms. GIROUX clearly "timely withdrew" under R.C. 3513.052(H)(2)(a). As such, even if *arguendo* R.C. 3513.052 prohibited Ms. GIROUX from being a candidate at two different elections, *i.e.* the election on May 3 and the election on August 2, she satisfied the safe harbor provisions therein.

**B. As a supporter of Ms. Giroux and her candidacy, Ms. Daly has standing in her own right.**

Secretary LAROSE also briefly takes issue with the standing of Ms. DALY in her own right. *See Memorandum in Opposition, at 15* (PageID#146). Failing to appreciate the nature of

the constitutional rights and claims involved in this case and under the rubric of *Anderson-Burdick*, Secretary LaROSE wrongfully couches Ms. DALY's claim as nothing more than a generalize grievance that the law has not been followed.

But "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights." *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983).  And as the Supreme Court found in *Anderson* (which included three voters as plaintiffs, in addition to the candidate), an early candidate filing deadline not only burdens the associational rights of candidates and their supporters, but also placed a significant state-imposed burden on the electoral process itself.  *Id.* at 790-95.  In this instance, Ms. DALY is not a passive observer; she supported the candidacy of Ms. GIROUX as a signatory on her petition (thereby engaging in her rights of core political speech and association), and she further desires and intends to vote for Ms. GIROUX at the forthcoming primary election.  *Verified Complaint ¶30* (Doc. No. 1, PageID#7); *Giroux Petition* (Doc No. 1-3, PageID#45).  Ms. DALY clearly has suffered a sufficient injury as a result of the 6-month candidate-filing deadline imposed by Secretary LaROSE through *Directive 2022-34.*

## II. The *Purcell* principal does not preclude the narrow and limited relief sought in order for this federal court to vindicate the constitutional rights of Ms. Giroux and Ms. Daly.

Though this case is in large part the result of his own making and his last-minute decree to impose a 6-month candidate-filing deadline, Secretary LaROSE now seeks to dissuade this Court from even considering the fundamental constitutional issues herein based upon the *Purcell* principle.  *See Memorandum in Opposition, at 20-22* (PageID#151-53).  Derived from the Supreme Court's decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), the "*Purcell* principle counsels federal courts to exercise caution and restraint before upending state election regulations on the eve of an election."  *Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020).  As summarized by the Sixth Circuit in *Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016):

> When an election is 'imminen[t]' and when there is 'inadequate time to resolve []
> factual disputes' and legal disputes, courts will generally decline to grant an
> injunction to alter a State's established election procedures. That is especially true
> when a plaintiff has unreasonably delayed bringing his claim….

*Id.* at 398. As this makes clear, though, "*Purcell* does not lay out a bright-line rule that the courts should never order a change to election-related proceedings close to the date of an election. There well may be situations when such court-sanctioned modifications will be necessary." *South Carolina Progressive Network Ed. Fund v. Andino*, 493 F. Supp. 3d 460, 469 (D.S.C. 2020)

Firstly, running contrary to the judge-made prudential advisement of *Purcell* is the repeated admonition of the Supreme Court that federal courts "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given,'" and that "[t]he one or the other would be treason to the Constitution." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 358 (1989) (quoting *Cohens v. Virginia*, 19 U.S.(6 Wheat.) 264, 404 (1821)). For it is to the federal courts that the people appropriately look to ensure the protection of basic and fundamental constitutional rights as "[t]he broad power of federal courts to grant equitable relief for constitutional violations has long been established." *Carlson v. Green*, 446 U.S. 14, 42 (1980)(Rehnquist, J., dissenting). The *Purcell* principle has its appropriate place in federal jurisprudence but not at the absolute expense and exclusion of vindicating individuals' federal constitutional rights. *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, __ (11th Cir. 2022)("even under *Purcell*, a state's interest in proceeding under challenged election procedures is not 'absolute'"). Thus, contrary to the suggestion of Secretary LAROSE, "*Purcell* is not a magic wand that defendants can wave to make any unconstitutional election restriction disappear so long as an impending election exists." *People First of Ala. v. Sec'y of State for Ala.*, 815 Fed. Appx. 505, 514 (11th Cir. 2020).

Additionally, the *Purcell* principle generally applies to matters relating to the mechanics

of conducting the election itself. *See Bryan v. Fawkes*, 61 V.I. 416, 469 (2014)("we note that *Purcell* and similar cases…did not involve challenges to a candidate's access to the ballot, but instead involved requests for courts to impose large-scale changes to the election process itself that affected both voters and poll workers"). Thus, for example, *Purcell* has arisen and been applied in the context of those seeking last-minute changes to voter identification requirements, *Veasey v. Perry*, 769 F.3d 890 , 892-94 (5th Cir. 2014); or drop-box locations, *A. Philip Randolph Inst. of Ohio v. LaRose*, 831 Fed. Appx. 188, 191 (6th Cir. 2020); or the deadline for submitting absentee ballots, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. __, __, 140 S.Ct. 1205, 1207 (2020). In contrast, this case does not seek to change the mechanics of how the election is conducted, so even the consideration of *Purcell* is weak if not dubious.

Furthermore, in terms of timing, court have placed the potential applicability of the *Purcell* principle to challenges arising on the "eve of an election", *Kishore v. Whitmer*, 972 F.3d 745, 751 (6th Cir. 2020); or "close in time to the election", *Texas Alliance v. Hughs*, 976 F.3d 564, 567 (5th Cir. 2020); or when an election is "imminent", *Crookston*, 841 F.3d 396. "How close to an election is too close may depend in part on the nature of the election law at issue[] and how easily the State could make the change without undue collateral effects. Changes that require complex or disruptive implementation must be ordered earlier than changes that are easy to implement." *Merrill v. Milligan*, 595 U.S. __, __, 142 S.Ct. 879, 881 n.1 (2022) (Kavanaugh, J., concurring). The nature of the effort herein does not necessitate a wholesale disruption of the election process itself; it simply seeks to have Ms. GIROUX not be subject to the 6-month candidate-filing deadline imposed by *Directive 2022-34* and, thus, to have her name placed on the ballot as she filed her declaration of candidacy and petition greater than 90 days before the forthcoming primary election. Such effort does not work to dispute the entire election process and, instead, vindicates

10

constitutional rights.  In fact, the Ohio Supreme Court regularly has ordered boards of elections to place candidates (or ballot issues) on the ballot well within 60 days of the election and even after the ballots have been printed.  *See State ex rel. Owens v. Brunner*, 125 Ohio St. 3d 130, 926 N.E.2d 617, 2010-Ohio-1374 (directing election authorities to place candidate on ballot just over one month before primary election, even after absentee ballots had been printed and mailed, and voting commenced); *State ex rel. Davis v. Summit County Bd. of Elections*, 137 Ohio St. 3d 222, 998 N.E.2d 1093, 2013-Ohio-4616 (directing election authorities to place candidate on ballot 18 days before election day).  Thus, in terms of timing versus any potential disruption to the election process, *Purcell* is not even applicable.[4]

Finally, even if the present case is so "close to the election" that the *Purcell* principle might come into play (which Ms. GIROUX contends is not the case), "[a] last-minute event may require a last-minute reaction." *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 642 (7th Cir. 2020).  While state law provided for a 90-day candidate-filing deadline and Secretary LaROSE clearly announced the primary for state representative was not occurring on May 3, Ms. GIROUX complied with the timing requirements under state law.  Yet, it was not until Secretary LaROSE issued *Directive 2022-34* on May 28 wherein he unilaterally imposed a 6-month candidate-filing

---

[4]    In claiming judicial intervention at this stage would disrupt the administration of the election, Secretary LaROSE makes much ado about the timing to mail ballots to military and oversea personnel pursuant to UOCAVA – the Uniformed and Overseas Citizens Absentee Voting Act.  *See Memorandum in Opposition, at 21-22* (PageID#152-53).  But, as noted above, the Ohio Supreme Court has repeatedly ordered candidates onto the ballot much closer to an election without notwithstanding any UOCAVA requirements.  Furthermore, in making this argument at this time, Secretary LaROSE demonstrates a fundamental and basic misunderstanding about UOCAVA. Obligations under UOCAVA only apply to "elections for Federal office". *See* 52 U.S.C. 20302 (imposing responsibilities upon the States for "absent uniformed services voters and overseas voters" with respect to elections "for Federal office"); 52 U.S.C. 20310(3)(defining "Federal office").  And, with no federal office appearing on the primary ballot on August 2, Secretary LaROSE wrongfully attempts to invoke UOCAVA to this Court in an effort to deny relief for constitutional violations.  UOCAVA has no application to the August 2 primary.

deadline for the primary election on August 2 that the issue even arose and ripened. It was last-minute action by Secretary LAROSE himself that directly impacted and infringed the fundamental constitutional rights of Ms. GIROUX and Ms. DALY and, thus, immediate court intervention was required. Secretary LAROSE cannot find refuge in *Purcell* for his own last-minute conduct.

In light of the timing involved and the narrow nature of the relief sought herein, as well as such relief is readily granted by Ohio courts even closer to the elections, the effort by Secretary LAROSE to have this Court avoid addressing the 6-month candidate-filing deadline he imposed at the last minute by his recent fiat in *Directive 2022-34* is misplaced. In this case and context, the judge-made prudential principle under *Purcell* does not trump the protection and vindication of the fundamental constitutional rights of Ms. GIROUX and Ms. DALY by this federal court.

## III. The 6-month candidate-filing deadline imposed by Secretary LaRose pursuant to *Directive 2022-34* does not satisfy the requirements of *Anderson-Burdick*.

While Secretary LAROSE acknowledges that *Anderson-Burdick* controls the disposition of this case, *see Memorandum in Opposition, at 23-24* (PageID#154), not surprisingly, he comes to a different conclusion, though with no appreciation, again, that the issue involves the 6-month candidate-filing deadline that he unilaterally imposed through *Directive 2022-34* and his selective and contradictory application of what constitutes "the day of primary election" by which various deadlines are established under state law.

### A. Secretary LaRose denying a candidate access to the ballot through a 6-month candidate-filing deadline constitutes a severe or absolute burden on the constitutional rights of the candidate and her supporters.

Failing to appreciate that the issue is the 6-month candidate-filing deadline, Secretary LAROSE attempts to minimize the nature of the burden on ballot access that is at issue. As argued in the *Motion for Temporary Restraining Order, etc., at 8* (Doc. No. 3, PageID#59), yet completely unaddressed by Secretary LAROSE, the Sixth Circuit has recognized that "[a] very early filing

deadline, for example, combined with an otherwise reasonable petitioning requirement, can impose a severe burden…." *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 575 (6th Cir. 2016). That is precisely what Ms. GIROUX has encountered through Secretary LAROSE unilaterally imposing the 6-month candidate-filing deadline through *Directive 2022-34* and ignoring the applicable provision of state law, *i.e.*, R.C. 3513.05. And also ignored by Secretary LAROSE was the one case where the Supreme Court directly addressed an early filing deadline wherein the Court found such deadlines not only burdened the associational rights of voters and candidates, but also placed a significant burden on the electoral process itself. *See Anderson*, 460 U.S. at 790-95.

Compounding the magnitude of the burden is another point Secretary LAROSE ignores: through *Directive 2022-034*, Secretary LAROSE has unilaterally imposed a filing deadline based upon a state legislative district map that did not even exist at the time, yet he seeks to impose a static political landscape for the next 6 months premised upon the state of affairs as of that date, even though the electoral landscape in Ohio had already descended in government-imposed chaos. Yet, this Court need look no further than the seminal case on candidate-filing deadlines to recognize how such a mandate severely burdens the rights of would-be candidates and their supporters. In addressing the significant burden resulting from early filing deadlines, the Supreme Court in *Anderson* recognized:

> [C]andidates and the issues simply do not remain static over time. Various candidates rise and fall in popularity; [] developments bring new issues to center stage…. Such developments will certainly affect the strategies of candidates who have already entered the race; they may also create opportunities for new candidacies.

*Anderson*, 460 U.S. at 790; *accord Council of Alternative Political Parties v. Hooks*, 121 F.3d 876,880 (3d Cir. 1997)("issues and candidates do not remain static over the course of an election campaign"). Similarly, such dynamic aspects are also implicated in light of the 6-month candidate-

filing deadline imposed by Secretary LAROSE through *Directive 2022-34*.

As of February 2, *Map 2* was in place since its adoption on January 22, 2022, and its was based upon *Map 2* that declarations of candidacy and petitions were filed. Yet, five days later, *Map 2* was invalidated and those candidates who had just filed their declarations of candidacy and petitions, as well as the general public, were left in the dark as to what the state legislative district maps would ultimately be applicable at any forthcoming primary. Furthermore, when *Map 3* was adopted on February 24 (after the filing deadline Secretary LAROSE still seeks to impose), one candidate in the pertinent state house district who had filed by February 2 withdrew from the race. *Stipulations ¶¶6 & 18.* Thus, between the ensuing saga of successive legislative district maps being invalidated and the strategies and opportunities for candidates and would-be candidates very much in flux, the dynamic nature of political campaign recognized in *Anderson* was vibrant and, thus, creating an opportunity for a new candidate, such as Ms. GIROUX. Yet, the effort of Secretary LAROSE to etch in stone for the ensuing 6 months the landscape as it existed on February 2 has directly and severely impacted the constitutional rights of Ms. GIROUX and her supporters, including Ms. DALY.

**B. Secretary LaRose offers no legitimate interest or justification for the imposition of 6-month candidate-filing deadline.**

Next, Secretary LAROSE contends, in nothing more than talismanic fashion, that "Directive 2022-34 is necessary for the orderly conduct of the August 2 primary election." *See Memorandum in Opposition, at 25* (PageID#156). Again, though, in making such a generalized self-serving declaration, he fails to acknowledge or appreciate that the issue is his imposition of a 6-month candidate-filing deadline through *Directive 2022-34,* notwithstanding state law imposing a 90-day filing deadline (a deadline with which Ms. GIROUX satisfied). *See* R.C. 3513.05 ("[e]ach person desiring to become a candidate for a party nomination at a primary election …

14

shall, not later than four p.m. of <u>the ninetieth day before the day of the primary election</u>, file a declaration of candidacy and petition"). And, thus, he offers no specific and legitimate justification or governmental interest for imposing the 6-month filing deadline.

Instead, Secretary LAROSE claims, through the declaration of one of his assistants, that, as of June 8 (nearly 5 weeks after Ms. GIROUX filed her declaration of candidacy and petition with the HAMILTON COUNTY BOARD OF on May 2), "there is not enough time between now and June 17, 2022, for the boards to review of the signatures and petitions of additional candidates, decided whether to certify (or not to certify) their petitions, set a deadline for interested parties to file protests on those petitions, set and hold a hearing on any protests, and then decide the protest." *Grandjean Declaration ¶37* (Doc. No. 10-1, PageID#169).[5]

Of course, Ms. GIROUX filed her declaration of candidacy and petition with the HAMILTON COUNTY BOARD OF ELECTIONS over five weeks ago. *See Stipulations ¶34.* Yet, Secretary LAROSE and Ms. Grandjean (as well as the HAMILTON COUNTY BOARD OF ELECTIONS) offer no explanation as to why the signatures on Ms. GIROUX's petition could not have been check during the past five weeks consistent with the regular order and process of elections when candidates regularly make their filings at least 90 days before the election consistent with R.C. 3513.05.[6] Instead, the BOARD OF ELECTIONS did nothing with the petition for over five weeks and, now, having done nothing, Secretary LAROSE now attempts to

---

[5]    Of course, the June 17 date is premised upon UOCAVA which, as explained above, is not even applicable to the August 2 primary election as there are no federal offices on the ballot. *See note* 4, *supra.*

[6]    With respect to the May 3 primary, the petitions for congressional candidates were filed only 60 days before that primary and, yet, the boards of elections were able to process them in regular order. *See Stipulations ¶13* (filing deadline of March 4 for congressional candidates for the primary election of May 3). Not only does Secretary LAROSE and Ms. Grandjean conveniently ignore this fact, but it also undermines the conclusory and self-serving assertion now posited by Ms. Grandjean.

create an issue of the inability to timely review the signatures (which the BOARD OF ELECTIONS has never indicated it could not do); if the ability to confirm 50 signatures is truly an issue, it is exclusively one of their own making.[7]  This Court should not condone and countenance an argument based on dilatoriness and inaction.

As for the non-specific litany of hurdles that Secretary LaROSE now posits through Ms. Grandjean would cause some purported catastrophic interference with election administration, there is no basis for such contentions when Ohio law is actually considered and applied.  With respect to potential protest against such petitions, the time period for such protest has already expired under state law.  Specifically, R.C. 3513.05 provides that:

> Protests against the candidacy of any person filing a declaration of candidacy for party nomination…may be filed by any qualified elector who is a member of the same political party as the candidate and who is eligible to vote at the primary election for the candidate whose declaration of candidacy the elector objects to, or by the controlling committee of that political party. The protest shall be in writing, and shall be filed not later than four p.m. of the seventy-fourth day before the day of the primary election.

When "a protest is not filed with the board of elections before the required day prior to the election, it is too late to be effective and the board of elections may disregard it…." *Pierce v. Brushart*, 153 Ohio St. 372, 378, 92 N.E.2d 4 (1950).  The time within which anyone could file a protest, *i.e.*, 74 days before August 2, has passed and, thus, the effort by Secretary LaROSE and Ms. Grandjean to raise to the Court the need for time to schedule and address any potential protest is nothing more

---

[7]    Under R.C. 3513.05, a candidate filing a declaration of candidacy and petition for state representative with a major party need only submit 50 valid signatures: "if the declaration of candidacy is of one that is to be submitted only to electors within a district, … the petition shall be signed by not less than fifty qualified electors who are members of the same political party as the political party of which the candidate is a member."  Yet, Secretary LaROSE and Ms. Garandjean do not apprise the Court of this relatively low number of signatures that would need to be confirmed; simply stated, confirming 50 signatures is not the Herculean task Secretary LaROSE and Ms. Grandjean intimate would be involved.

16

than a red herring.[8]

And as for impacting the ability of the HAMILTON COUNTY BOARD OF ELECTIONS (or any board of elections) to make a decision whether to certify or not certify the would-be candidates who complied with state law and filed their declaration of candidacy and petition greater than 90 days before August 2, at this stage, state law precludes the boards of elections from *sua sponte* rejecting, *i.e.*, not certifying, such petitions.  While R.C. 3501.39(A)(4) allows a board of elections to reject a declaration of candidacy or petition if either "violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law", R.C. 3501.39(B) imposes a strict time limit within which it must do so:

> a board of elections shall not invalidate any declaration of candidacy or nominating petition under division (A)(4) of this section after the sixtieth day prior to the election at which the candidate seeks nomination to office, if the candidate filed a declaration of candidacy….

And the Ohio Supreme Court has unequivocally confirmed that any action by a board of elections to invalidate a petition or candidacy within 60 days of the primary election is untimely and prohibited by R.C. 3501.39(B).  *State ex rel. Yeager v. Richland Cty. Bd. of Elec.*, 136 Ohio St. 3d 327, 995 N.E.2d 228, 2013-Ohio-3862 ¶¶20-23.

Thus, while Secretary LaROSE, through Ms. Grandjean, has attempted to posit certain interests in support of the talismanic "orderly election" interest, the specific issues they raise are either the result of their own dilatoriness or otherwise foreclosed by state law.  Simply stated, in

---

[8]  When Ms. Grandjean references the ability for a board of elections to "set a deadline for interested parties to file protests on those petitions," *Grandjean Declaration ¶37* (Doc. No. 10-1, PageID#169), she further demonstrates a lack of basic knowledge of state election law, notwithstanding her position as Deputy Assistant Secretary of State and State Elections Director. As indicated above, the deadline for interested parties to file protests is established by the Ohio General Assembly through enactment of R.C. 3513.05.  There is no legal basis to suggest to this Court that a board of elections can readily ignore that state law and schedule a protest hearing on its own and within 74 days of an election.

the context and timing of this case (when Ms. GIROUX filed her declaration of candidacy and petition over 90 days before August 2), such claimed interest lacks any legitimacy or strength, especially when considered vis-à-vis the fundamental constitutional rights implicated by the 6-month candidacy-filing deadline imposed by Secretary LAROSE through *Directive 2022-34*.

IV.  **Secretary LaRose continues to ignore the constitutional rights irreparably harmed by his imposition of a 6-month candidate-filing deadline pursuant to** *Directive 2022-34*.*.*

With respect to addressing the irreparable harm that will inure to Ms. GIROUX and Ms. DALY absent injunctive relief, Secretary LAROSE does not directly address that issue but, instead, simply relies upon his argument concerning whether Ms. GIROUX has standing. *See Memorandum in Opposition, at 26* (PageID#157).  In so doing, he does not take issue that his imposition of a 6-month candidate-filing deadline places burdens on "two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to their votes effectively."  *Motion for Temporary Restraining Order, etc., at 13-14* (Doc. No. 3, PageID#64-65)(quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)), as well as the lost or infringement of fundamental constitutional rights is irreparable in and of itself.

V.  **Secretary LaRose does not contest or refute with propositions directly addressing the public interest supporting injunctive relief.**

Instead of directly addressing, as part of the preliminary injunction analysis, the public interest involved, Secretary LAROSE simply attempts to make a perfunctory re-argument of the *Purcell* principle, *see Memorandum in Opposition, at 27* (PageID#158), which, as demonstrated above, is not applicable in this case.  *See pages 8-12,* supra.  In so doing, Secretary LAROSE has not contested or taken issue with the propositions that "the public interest includes having good candidate choices on the ballot," as well as "ensuring that individual voters may associate for the

18

advancement of political beliefs and cast a vote for their preferred candidate … is extraordinary." *Motion for Temporary Restraining Order, etc., at 14* (Doc. No. 3, PageID#65)(quoting *Germalic v. Gant*, 2012 U.S. Dist. LEXIS 154432, at *8 (D.S.D. Oct. 26, 2012), and *Griffin v. Padilla*, 417 F. Supp. 3d 1291, 1307 (E.D. Calif. 2019), respectively). Furthermore, "it is always in the public interest to prevent violation of a party's constitutional rights, " *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). And "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights," *Anderson*, 460 U.S. at 786, including First Amendment rights of speech and association. Thus, as with all aspects of the preliminary-injunction standard, the public interest further supports issuance of injunctive relief.

## VI.   CONCLUSION.

Based upon the foregoing, together with the arguments in *Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction* (Doc. No. 3, PageID#52-67), Ms. GIROUX and Ms. DALY have sufficiently established that a likelihood of success on the merits under *Anderson-Burdick*, the irreparable harm that will inure to them and the voting public in the absence of preliminary relief, and that an injunction is in the public interest. And as, under Ohio law, election laws are liberally construe in favor of persons seeking to hold public office to avoid restricting the right of electors to choose from all qualified candidates, injunctive relief is further in order so as to enjoin and restrain *Directive 2022-34* to the extent Secretary LAROSE has unconstitutionally imposed a 6-month candidate-filing deadline for those seeking to be candidates for, *inter alia*, state representative at the forthcoming primary election to be held on August 2, 2022, and that the HAMILTON COUNTY BOARD OF ELECTIONS and its individual members be prohibited from rejecting or otherwise taking adverse actions concerning the declaration of candidacy and petition of JENNIFER GIROUX, that they immediately process the declaration of

candidacy and petition filed by JENNIFER GIROUX on May 1, 2022, consistent with state law and the process of all other declarations of candidacy and petitions of those seeking to appear on the ballot at the forthcoming election and, in turn, to proceed to place the name of JENNIFER GIROUX on the ballot at the forthcoming primary election to be held on August 2, 2022, as a candidate for state representative for her respective state representative district based on the state legislative district map adopted by a three-judge panel of this Court effective May 28, 2022, together with any other relief to which she may be entitled in equity or in law.

Respectfully submitted,

 /s/ *Curt C. Hartman*
Curt C. Hartman
The Law Firm of Curt C. Hartman
7394 Ridgepoint Drive, Suite 8
Cincinnati, OH   45230
(513) 379-2923
*hartmanlawfirm@fuse.net*

Christopher P. Finney
Finney Law Firm LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, OH   45245
(513) 943-6650
*chris@finneylawfirm.com*

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing will be served upon all counsel of record through the Court's ECF system on the date of filing.

 /s/ *Curt C. Hartman*

**APPENDIX**

**Statutory references to "the day of the primary election"**
**or comparable language as implemented by *Directive 2022-34***

| | Ohio Revised Code | Deadline per Directive 2022-34 |
|---|---|---|
| **Candidate Petition Filing Deadline** | R.C. 3513.05: "Each person desiring to become a candidate for a party nomination at a primary election … shall, not later than four p.m. of <u>the ninetieth day before the day of the primary election</u>, file a declaration of candidacy and petition…." | **February 2, 2022** (90 days before May 3, 2022) |
| **Write-in Candidate Filing Deadline** | R.C. 3513.041: "Any candidate shall file a declaration of intent to be a write-in candidate before four p.m. of <u>the seventy-second day preceding the election at which such candidacy is to be considered</u>." | **February 22, 2022** (74 days before May 3, 2022) |
| | | |
| **UOCAVA** | R.C. 3511.04(B): "Not later than the <u>forty-sixth day before the day of each general or primary election</u>…, the director of the board of elections shall mail, send by facsimile machine, send by electronic mail, send through internet delivery if such delivery is offered by the board of elections or the secretary of state, or otherwise send uniformed services or overseas absent voter's ballots then ready for use as provided for in section 3511.03 of the Revised Code…." | **June 17, 2022** (46 days before August 2, 2022) |
| **Voter Registration Deadline** | R.C. 3503.19(C)(1): "A board of elections that receives a voter registration application and is satisfied as to the truth of the statements made in the registration form shall register the applicant …, unless that application is received during <u>the thirty days immediately preceding the day of an election</u>." | **July 5, 2022** (28 days before August 2, 2022) (30 days before August 2, 2022, being Sunday, July 3, 2022) |
| **Start of Early Voting** | R.C. 3509.01(A): "For all voters who are applying to vote absent voter's ballots in person, ballots shall be printed and ready for use beginning on <u>the first day after the close of voter registration before the election</u>." | **July 6, 2022** |

| | | |
|---|---|---|
| **Pre-Primary Campaign Finance Report Deadline** | R.C. 3517.10(A): "…every campaign committee … that made or received a contribution or made an expenditure in connection with the nomination or election of any candidate … shall file… a full, true, and itemized statement… setting forth in detail the contributions and expenditures, not later than four p.m. of the following dates: (1) <u>The twelfth day before the election to reflect contributions received and expenditures … to the close of business on the twentieth day before the election;</u> | **July 21, 2022** (12 days before August 2, 2022) to reflect activity through **July 13, 2022** (20 days before August 2, 2022) |
| **Independent Candidate Petition Filing Deadline** | R.C. 3513.257: "Each person desiring to become an independent candidate for an office for which candidates may be nominated at a primary election, … shall file no later than four p.m. <u>the day before the day of the primary election</u> immediately preceding the general election at which such candidacy is to be voted for by the voters, a statement of candidacy and nominating petition as provided in section 3513.261 of the Revised Code." | **August 1, 2022** (1 day before August 2, 2022) |